UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRANCE L. RELEFORD,

    Plaintiff,

v.

CITY OF TUKWILA, et al.,

    Defendants.

CASE NO. C07-2009RSM

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

This matter is before the Court for consideration of the Report and Recommendation and the Objections filed by defendants. Dkt. ##45, 49, 62. Although defendants have requested that they be heard in oral argument, the Court deems that unnecessary.

Plaintiff Terence Releford, appearing *pro se* and *in forma pauperis*, filed this prisoner civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Fourth Amendment right to be free of excessive force when the defendant officers used a Taser on him four times. After answering the complaint, the City of Tukwila ("the City") and the individual defendants moved separately for summary judgment, and plaintiff filed a cross motion, supporting his motion with a memorandum and exhibits.

On September 17, 2008, Magistrate Judge Mary Alice Theiler issued a thorough and well-

ORDER - 1

reasoned Report and Recommendation finding that the City's motion for summary judgment should be granted, the individual defendants' motion should be denied, and that plaintiff's motion for partial summary judgment should be granted in part and denied in part. Dkt. # 45. The Court shall approve and adopt the Report and Recommendation in all but one aspect. This Order addresses certain arguments made by defendants in their Objections to the Report and Recommendation, as well as incorporates the recent modification of qualified immunity analysis announced by the Supreme Court on January 21, 2009. *Pearson v. Callahan*, 129 S.Ct. 808, 77 USLW 4068 (2009).

## DISCUSSION

This action arises from the actions of two City of Tukwila police officers on the night of June 5, 2006, when they arrested plaintiff on a bench warrant issued for his failure to appear in Tukwila Municipal Court on charges of shoplifting and criminal trespass. Plaintiff was incarcerated in King County Jail on unrelated charges from February 10, 2006 until May 23, 2006, and did not notify the Tukwila Municipal Court of his incarceration, so he did not receive notice of the hearings he was supposed to attend. The bench warrant was issued on May 19, 2006 after plaintiff failed to appear at hearings set for April 24 and May 15, 2006. City of Tukwila's Motion for Summary Judgment, Dkt. # 24, pp. 4-6.

Plaintiff was well known to the City of Tukwila police officers due to his numerous arrests in 2005 on charges including traffic violations, shoplifting, criminal trespass, and possession of drug paraphernalia. *See*, Tukwila Police Department Record of Contacts, Dkt. # 26, Exhibit 6. There was also a series of contacts on domestic violence/fourth degree assault charges in June, 2005, but none after June 23, 2005. *Id*.

In the early morning hours of June 5, 2006, Officer Vivet saw plaintiff enter a 7-11 grocery, recognized him, confirmed the outstanding warrant, and then called for backup. The following excerpt from Officer Vivet's incident report describes his subsequent actions:

> I watched as RELEFORD exited the store and walked WB on S 142nd St. I waited for a second unit before contacting RELEFORD because on previous occasions he has been hostile towards police and gets upset quickly. Officer Richardson arrived as RELEFORD

ORDER - 2

was walking in the 3500 block of S 142nd St. I pulled my vehicle so that RELEFORD was near the front passenger bumper. I exited my vehicle, instructed RELEFORD to stop and as I was walking towards him I instructed him to turn around and place his hands behind his back because he was under arrest.

RELEFORD, who is listed as 6-5 and 280 pounds, put his hands in the air and said, "What, I didn't do anything." I again ordered RELEFORD to turn around and place his hands behind his back, but he ignored my commands. I took my department issue taser (X00-186060) out of its holster and turned it on, pointing the red laser dot at RELEFORD'S chest. I again instructed RELEFORD to turn around and place his hands behind his back because he had warrants for his arrest. RELEFORD ignored my commands. Officer Richardson was with me during the entire contact and was also giving commands to RELEFORD to turn around and place his hands behind his back.

At this time I deployed my department issue taser at the same time that Officer Richardson deployed his taser. The taser had immediate effect and RELEFORD fell to the ground. After one cycle Officer Richardson gave RELEFORD commands to roll on his stomach and place his hands behind his back, but he ignored these commands. RELEFORD was yelling something, but I could not understand him. Officer Richardson applied a second cycle from his taser and after this RELEFORD complied with the instructions and was taken into custody.

Plaintiff's Motion for Partial Summary Judgment, Dkt. # 30, p 24.

Officer Richardson's incident report is consistent in describing the same scene:

Upon my arrival, Officer Vivet and I contacted RELEFORD as he was walking into the parking lot of the Mt. View apartments. As we contacted RELEFORD, officer Vivet immediately told RELEFORD that he was under arrest and instructed him to turn around and place his hands behind his back. RELEFORD ignored Officer Vivet's instructions and kept asking, Why, what did I do?" Officer Vivet told RELEFORD that he had several warrants as I instructed RELEFORD to turn around and put his hands behind his back. RELFORD [sic] refused to comply with our instructions and continues to ask what he did and why.

At that point, I activated my Taser for one full cycle. After the first cycle, I instructed RELEFORD to roll onto his stomach and put his hands behind his back. RELFORD [sic] rolled to his stomach but did not put his hands behind his back. After activating my Taser for a second cycle, RELEFORD immediately put his hands behind his back and was taken into custody without further incident. This ended my involvement in this case.

*Id*., p. 33.

A third officer, Officer Baalaer, who is not a defendant here, was present at the scene. His incident report states as follows:

I arrived with Officer Vivet and Richardson in the area at about the same time and observed Releford standing in the street by the Dragon Court apartments. From what I can recall, Officer Vivet advised Releford that he had a warrant for his arrest. Releford put his hands up in disbelief and stated something to the effect of, "What are you talking about, I just got

ORDER - 3

out of jail." Officer Vivet was standing on one side of Releford and Officer Richardson was standing on the other side, both holding their tasers.

Releford put his hands down and started to walk away. I'm not sure, but either Officer Richardson or Officer Vivet warned him to stop or he would be tazed. Releford did not comply and continued to walk away. Officer Richardson and Officer Vivet almost simultaneously deployed their tasers at Releford who fell to the ground. Releford then rolled on the ground, wrapping the tazer wires around him.

It appeared that there was only 1 cycle of the tazer, but I'm not sure. I don't remember who handcuffed Releford at that point.

*Id.*, p. 34.

Plaintiff alleges in his *pro se* complaint that the defendants, including the two individual officers and the City, violated his Fourth Amendment right to be free of unlawful arrest and excessive force. The City moved for summary judgment on the basis that plaintiff had not adequately alleged a policy or custom to impose § 1983 liability upon the municipality. Dkt. # 24. The individual defendants moved for summary judgment on the basis of qualified immunity. Dkt. # 25. Plaintiff moved for partial summary judgment on his Fourth Amendment claim of unlawful arrest and excessive force. Dkt. # 30.

After a thorough review of the parties' memoranda and relevant case law, the Magistrate Judge issued a Report and Recommendation, recommending that the City's motion for summary judgment be granted, that the individual defendants' motion for summary judgment on the basis of qualified immunity be denied, and that plaintiff's motion for partial summary judgment be granted as to the excessive force claim, and denied as to the unlawful arrest claim. The Magistrate Judge further recommended that counsel be appointed for plaintiff and the matter set for trial on plaintiff's damages. Dkt. # 45. The individual defendants filed timely Objections to the Report and Recommendation, setting forth seven separate bases for their objection. These shall be addressed in turn.

(1) Declaration of Tom Ovens

First, defendants assert that Tom Ovens' "uncontroverted testimony" was overlooked by the Magistrate Judge. Mr. Ovens is an experienced police officer who provided a declaration stating that in his opinion the use of Tasers on plaintiff was not excessive force. Dkt. # 27. He states, "Given that the use of verbal commands and presence were ineffective, the use of control tools and/or control tactics was

ORDER - 4

a reasonable response to take into custody a known offender who had multiple warrants and was of substantial size, 6-6 and 300 lbs." *Id*., ¶ 11. He concludes, "In my opinion, the use of a Taser device to control the plaintiff under the standards in place at the time of this incident was a reasonable use of force based upon the totality of circumstances." *Id*., ¶ 13.

Defendants contend that this uncontroverted expert testimony "by itself is enough" to defeat plaintiff's motion for summary judgment. Defendants' Objections to Report and Recommendation, Dkt. # 49, p. 4. This contention is without merit. There is no basis for finding that the Magistrate Judge "overlooked" this declaration. Mr. Ovens' opinion does not constitute "undisputed evidence" as defendants claim; it is a conclusion on the ultimate legal issue in this matter. The Magistrate Judge correctly applied her own legal knowledge and experience on that ultimate legal issue; she was not bound to accept that of defendants' expert.

(2) <u>Inferences Drawn in Plaintiff's Favor</u>

It is a long-standing rule that at the summary judgment stage, the "underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Defendants contend in their Objections that the "R&R mistakenly drew all inferences in favor of moving party plaintiff". Objections to Report and Recommendation, Dkt. # 49, p. 5. This assertion is incorrect for two reasons. First, defendants fail to recognize that there were cross-motions for summary judgment, and that on defendants' motion for summary judgment on qualified immunity it is proper for the Court to draw inferences in plaintiff's favor as he is the non-moving party. Second, as to the specific examples cited by defendants, a review of the evidence shows that the Magistrate Judge did not improperly resolve any factual disputes or draw unwarranted inferences.

Defendants object that the Report and Recommendation did not properly credit the two officers' statements, submitted in declarations in support of the summary judgment motion, that Mr. Releford was

ORDER - 5

accompanied by other individuals, and that these other individuals were a factor justifying the use of the Taser. Referring to the declarations, defendants argue that, "Officer Vivet testified that the presence of two other individuals heightened his concern for officer safety based on his training, and indeed was one of the reasons he waited for backup before he tried to arrest Releford." *Id*., p. 6 n. 6. The Report and Recommendation discounted these declaration statements by stating,

> The court notes that the presence of these other unidentified individuals is not mentioned in the report that Officer Vivet filed at the time of the arrest, nor in a similar report filed by Officer Richardson. Indeed the only place individuals are mentioned is in the declarations of the two defendants, and in neither declaration do the defendants specify the individuals' size, age, gender, or proximity to them during the arrest. . . .

Report and Recommendation, p. 3, n. 1.

In denying defendants' motion for summary judgment on qualified immunity, it was proper for the Court to draw the inference that the other individuals mentioned in the officers' summary judgment declarations were not a significant factor affecting the officers' decision to Taser plaintiff. Not only did Officer Vivet's Continuation Report on the incident fail to mention any other individuals, it affirmatively stated that the reason he called for back-up was his prior experience with plaintiff. As he stated in his report, "I waited for a second unit before contacting RELEFORD because on previous occasions he has been hostile towards police and gets upset quickly." Plaintiff's Motion for Summary Judgment, Dkt. # 30, p. 24. He did not mention the presence of additional persons. *Id*. In the "Use of Force" Reports filled out by both Officer Vivet and Officer Richardson, there was a space to check "Multiple opponents—Number ( )" under "Other Conditions" existing at the time of the use of force. Neither officer checked that factor as applicable. *Id*., pp. 18, 27. Instead, both officers checked only "Passive uncooperative" and "Hostile demeanor/posture" from the list of possible conditions and factors leading to the use of force. *Id*. Further, in his written statement given to Commander Michael Villa on December 5, 2006, Officer Vivet never mentioned the presence of other individuals as a factor in his use or force. Declaration of Michael Villa, Dkt. # 26, Exhibit 7. Nor did Commander Villa anywhere mention the presence of other individuals in his internal investigation report. *Id*., p. 42-44. These reports are all a matter of record and are completely consistent with one another in that none of them mentions the presence of individuals other than plaintiff. On defendants' motion for qualified immunity, it was proper

ORDER - 6

for the Magistrate Judge to draw an inference in plaintiff's favor in order to find from the uncontested facts presented in the police records that additional persons were not a factor justifying the use of excessive force.

However, as to plaintiff's motion for partial summary judgment on his excessive force claim, defendants are correct that all inferences must be drawn in their favor. Therefore, the Court finds that there are arguable issues of fact which preclude granting plaintiff's motion. In this respect alone, the Court does not adopt the conclusions of the Report and Recommendation.

(3) <u>Remaining Objections</u>

Defendants' remaining objections apply to various aspects of the qualified immunity analysis. Qualified immunity shields government actors from a suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. *Anderson v. Creighton*, 483 U.S. 635, 637-39, 641 (1987). Because qualified immunity is immunity from suit, rather than "a mere defense to liability," the Court should rule on the issue early in the proceedings so that defendants avoid the costs and expenses of trial where the defense is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Thus, at the summary judgment stage, a court necessarily decides qualified immunity if it turns on issues of law. *See Torres v. City of L.A.*, 540 F.3d 1031, 1044 (9th Cir.2008) (internal citations omitted).

Traditionally, in assessing whether an officer is entitled to qualified immunity, a court would first inquire whether the facts alleged, taken in the light most favorable to the plaintiff, establish a constitutional violation. *Saucier*, 533 U.S. at 200. If the court found a constitutional violation, the court would next consider "whether the right was clearly established." *Id.* at 202. This decisional sequence was recently modified by the Supreme Court, such that now the courts are "permitted to exercise . . . sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan, Callahan*,129 S.Ct. 808, 77 USLW 4068 (2009).

Here, regardless of the order in which the prongs are addressed, the result is the same. The Magistrate Judge properly found, after analysis under the *Graham v. O'Connor* "objective

ORDER - 7

reasonableness" factors, that the use of the Taser on plaintiff constituted excessive force under the circumstances. The relevant factors in this reasonableness inquiry include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. O'Connor*, 490 U.S. 386, 396 (1989). To these factors, the Ninth Circuit Court of Appeals has added further considerations, such as "the quantum of force used," as well as "the availability of alternative methods of capturing or subduing a suspect." *Davis v. City of Las Vegas*, 478 F. 3d 1048, 1055 (9th Cir. 2007); *Chew v. Gates*, 27 F. 3d 1432, 1441 n. 5 (9th Cir. 1994).

The Court finds an exhaustive discussion of defendants' objections on these points unnecessary, as none provides a basis for rejecting the well-reasoned analysis presented in the Report and Recommendation, in which the relevant factors were properly analyzed. Dkt. # 45, pp. 9-12. Moreover, in addition to the factors discussed in the Report and Recommendation, the excessive force conclusion is further supported by the haste with which the Tasers were deployed by the two officers. According to Commander Villa's investigative report, only one minute and twenty-six seconds elapsed between the time that Officer Vivet saw plaintiff and advised dispatch that he would be making contact with him, and the officer's post-Taser report.[1] Dkt. # 30, p. 43. During that brief time, Officer Vivet called for backup, waited for it to arrive, positioned his car to block plaintiff, exited his car, and informed plaintiff that he was under arrest numerous times, ordering him to turn around to be handcuffed. *See,* Officer Vivet's continuation report, Dkt. # 30, p 24. Another ten seconds of that intervening time were taken up with actual (and simultaneous) application of the Tasers (two five-second applications by each officer), leaving a little over a minute for the rest of the activity. Further, the uncontroverted evidence from the officers' reports shows that the two officers could not see one another and each was not aware that the other had activated his Taser. This supports the Magistrate Judge's conclusion, corroborated by Officer Baalaer's report, that the two officers were on opposite sides of plaintiff and giving him conflicting commands as to which way he should turn to comply with their orders. *See*, Report and Recommendation, p. 11. Finally,

---

[1]The officer's transmission tape shows that actually only one minute twenty seconds elapsed between the two reports. Dkt. # 30, p. 48.

ORDER - 8

the Court notes, as did the Magistrate Judge, the significance of the fact that neither officer has attempted to explain why less severe and intrusive options were not attempted or considered. All of these circumstances, taken together, lead to the Magistrate Judge's proper conclusion, for the purpose of qualified immunity analysis, that excessive force was applied.

Defendants assert in their Objections that even if their use of force was excessive, the law regarding Taser use was not clearly established at the time of plaintiff's arrest. Defendants argue that "the R&R mistakenly overlooked that Ninth Circuit authority involving the use of Taser by police officers was non-existent in the Fourth Amendment context prior to June 5, 2006, the date of Releford's arrest." Defendants' Objections, Dkt. # 49, p. 11 (emphasis in original).[2] However, the "clearly established law" prong of the qualified immunity inquiry is not as rigidly context-specific as defendants assert.

In *Anderson v. Creighton*, 483 U.S. 635, 640, (1987), the Supreme Court clarified that the right at issue must be defined with specificity. The Court noted that characterizing the right at issue in general terms--- e.g., 'the right to be free from excessive force'---would allow plaintiffs to "convert the rule of qualified immunity ... into a rule of virtually unqualified immunity simply by alleging violation of extremely abstract rights." *Id*. at 639. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson*, 526 U.S. at 615). However, an officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury. *See, Anderson*,

---

[2] Defendants' assertion overlooks a case in this district in which the Court found as a matter of law that as of June 30, 2003,"it was clearly established that the use of taser weapons in such an instance would constitute excessive force." *Harris v. County of King*, 2006 WL 2711769 (W.D.Wash. 2006). The Court cited to Ninth Circuit precedent: "While the use of taser guns is not per se unconstitutional, they may not be used when "unnecessary or for the sole purpose of punishment or the infliction of pain." *Id*. at * 3, citing *Mitchenfelder v. Sumner*, 860 F. 2d 328, 336 (9th Cir. 1998). While *Mitchenfelder* was an Eighth Amendment case involving prison security, the district court in *Harris* applied the principles in the Fourth Amendment context of an arrestee to find clearly established law.

ORDER - 9

483 U.S. at 640.

The Report and Recommendation correctly noted that it is not necessary to point to case authority which is precisely on point to resolve the qualified immunity inquiry. The Supreme Court has held that a requirement that existing authority be "materially similar" to the case at bar would impose an unduly "rigid gloss" on qualified immunity. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). It is enough if, "in the light of pre-existing law[,] the unlawfulness is apparent." *Id*. In an "obvious case," the *Graham* factors themselves are sufficient to clearly establish that the officers' use of force was unlawful. *See, Brosseau v. Haugen*, 543 U.S. 194, 199 (2004); *Davis v. City of Las Vegas*, 478 F. 3d at 1056-57. As in a prior case decided in this district, "where every *Graham* factor weighs in favor of using very little force, a prudent officer would have been on notice that the use of a device to cause extreme pain was not reasonable." *Brooks v. City of Seattle*, 2008 WL 2433737 (W.D.Wash. 2008). The haste with which the officers deployed their Tasers provides further support for the unreasonableness finding. As in *Brooks*, the plaintiff here "gave police no reason to rush their decisions." *Id*. Moreover, as the Magistrate Judge noted, the unreasonableness of the use of force was further exacerbated by the simultaneous firing of their Tasers by the two officers.

The Court therefore adopts the conclusions of the Report and Recommendation with respect to qualified immunity. Accordingly, it is hereby ORDERED:

(1) The Report and Recommendation is approved and adopted in part;

(2) The City of Tukwila's motion for summary judgment (Dkt. # 24) is GRANTED;

(3) The individual defendants' motion for summary judgment as to qualified immunity (Dkt. # 25) is DENIED;

(4) Plaintiff's motion for partial summary judgment (Dkt. # 32) is DENIED, with plaintiff's unlawful arrest claim being DISMISSED and his claim of excessive force being set for trial; and

(5) Plaintiff's motion for appointment of counsel (Dkt. # 30) is GRANTED.

The Clerk is directed to appoint counsel from the Pro Bono Panel pursuant to 28 U.S.C. § 1915(e). The Court shall by separate order set a schedule for pretrial preparation.

The Clerk shall direct copies of this Order to plaintiff at has address of record, to counsel for

ORDER - 10

defendants, and to the Hon. Mary Alice Theiler, United States Magistrate Judge.

Dated this 25th day of February, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 11